IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MICHAEL NEVILLS,**                                          CV. 1:11- 00559  RE

               Plaintiff,                          **OPINION AND ORDER**

     v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

          Defendant.

**REDDEN**, Judge:

Plaintiff Michael Nevills ("Nevills"), brings this action to obtain judicial review of a final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

his claim for Disability Insurance Benefits and Supplemental Security Income.  For the reasons

set forth below, the decision of the Commissioner is reversed and this matter is remanded for the

calculation and payment of benefits.

1  - OPINION AND ORDER

## BACKGROUND

Born in 1962, Nevills has a high school education. In June 2006, Nevills applied for disability benefits alleging disability since September 20, 2005 due to back pain. His application was denied initially and upon reconsideration. On January 27 2009, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated , February 13, 2009, the ALJ found Nevills not disabled. Nevills's request for review was granted, and a second hearing was held on October 12, 2010. In a decision dated October 25, 2010, the ALJ again found Nevills not disabled. Nevills now seeks judicial review of the Commissioner's decision.

## ALJ's DECISION

The ALJ found Nevills had the medically determinable severe impairments of degenerative disc disease of the cervical spine with left arm radiculopathy, cervical spine fusion, chronic pain disorder, and depression. Tr. 70.

The ALJ determined that Nevills retained the residual functional capacity to perform a limited range of light work, and that he can lift up to 25 pounds with his right arm and 10 pounds with his left arm, but he should not lift above shoulder height with his left arm, and should only occasionally reach or lift with his left arm. He is limited to simple, repetitive tasks with no public contact and only occasional interaction with co-workers. Tr. 73.

The ALJ determined that Nevills was unable to return to his past relevant work. The ALJ found that Nevills retained the ability to work as a electronics worker, hand packager, or small products assembler. Tr. 80.

The medical records accurately set out Nevills's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are

familiar with it.  Accordingly, the details of those medical records will be set out below only as

they are relevant to the issues before the court.

## DISCUSSION

Nevills contends that the ALJ erred by: (1) improperly weighing physician testimony; (2)

finding him not fully credible; (3) improperly rejecting lay testimony; and (4) failing to show

that he retains the ability to perform other work.  The first issue is dispositive.

### I. Physician Testimony

Disability opinions are reserved for the Commissioner.  20 C.F.R. §§

404.1527(e)(1); 416.927(e)(1).  If no conflict arises between medical source opinions, the ALJ

generally must accord greater weight to the opinion of a treating physician than that of an

examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  In such circumstances

the ALJ should also give greater weight to the opinion of an examining physician over that of a

reviewing physician.  *Id.*  But, if two medical source opinions conflict, an ALJ need only give

"specific and legitimate reasons" for discrediting one opinion in favor of another.  *Id.* at 830.

The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by

clinical findings."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### A. Ashlie Woodard, Physical Therapist and Jordi Kellogg, M.D.

A December 2005 MRI of Nevills's spine showed mild to moderate degenerative changes

at C4-7, minimal cervical curvature, complete loss of cervical lordosis, functional hypomobility

upon right lateral bending between C6-7 and C7-T1 and upon flexion and extension between C2-

3, C3-4, C4-5, C5-6 and C6-7.  There was severe right central canal stenosis at C5-6 and

moderately severe left central canal stenosis with impingement upon the spinal cord secondary to

moderate disc protrusions, spondylosis, and underlying narrowing of the central spinal canal.

Nevill was diagnosed with cervical radiculopathy and neural foraminal and central canal stenosis

due to disc osteophyte complex and disc herniation.

On June 1, 2006, Dr. Kellogg performed an anterior cervical microdiscectomy,

decompression of disc osteophyte complexes, arthrodesis, and fusion of C4-7.

In July 2008, the Oregon Office of Vocational Rehabilitation asked Dr. Kellogg to

perform a physical capacities evaluation of Nevills. Dr. Kellogg declined, but agreed to review

an evaluation and advise whether he agreed with it. Tr. 435. Ashlie Woodard, at Providence

Rehabilitation Services, conducted a two hour long physical capacities evaluation on July 15,

2008. Tr. 488-91. Ms. Woodard concluded that Nevills could perform sedentary work on a part-

time basis. She found that Nevills "did not demonstrate positional tolerance that would allow

him to work and [sic] eight hour day." Tr. 488. Ms. Woodard found that Nevill could only

occasionally perform overhead reaching, standing, and walking, and on a minimal basis lifting,

carrying, bending, and climbing. *Id.* She said that bending, kneeling, and crawling were limited

due to low back pain with forward flexion, and that reaching overhead was limited due to

decreased cervical extension. Tr. 489.

Vocational Rehabilitation sent the evaluation to Dr. Kellogg, who indicated that he

agreed that Neville could work only part time at a sedentary job by circling the word "yes." Tr.

434.

The ALJ gave Ms. Woodard's opinion little weight, noting that a physical therapist is not

an acceptable source for medical opinion evidence, and that a limited range of light work better

reflected the record as a whole, including medical opinions. Tr. 78. The ALJ did not mention

Dr. Kellogg's agreement with Ms. Woodard's assessment.

**B.  James Bryan, Ph.D.**

On June 10, 2010, Dr. Bryan conducted a psychological evaluation, including a clinical

interview and several tests. Tr. 534-47. Dr. Bryan found that Nevills's "symptom reporting and

effort during testing was variable and marginal, but not completely invalid." Tr. 542.

> Diagnostically, his condition appears to be most consistent with
> a Somatoform Pain Disorder. It is likely that psychiatric and
> cognitive symptom exaggeration is part of a somatoform pattern.
> Individuals with this pattern tend to overly rely upon symptoms
> as a maladaptive means of coping with stress.
>
> A Pain Disorder diagnosis does not discount the extent to which
> there may be a valid objective basis for subjective distress.
> Medical records support such a basis. Rather, the diagnosis
> highlights the extent to which he centers his activities and identity
> upon pain, and to which he relies upon symptoms as a maladaptive
> means of coping with other stressors.

Tr. 543.

Dr. Bryan found that Nevills had moderate limitations in understanding, remembering

and carrying out complex information, and making work related judgments. Tr. 545. He opined

that Nevills had marked limitations in interacting appropriately with the public, supervisors, co-

workers, and in responding appropriately to usual work situations and to changes in a routine

work setting. Tr. 546.

The ALJ noted Dr. Bryan's opinion and gave it significant weight, stating that Dr. Bryan

had the opportunity to examine Nevills and administer testing. However, his opinion regarding

Nevills's ability to interact with other people was given less weight because "Dr. Bryan reports

this is primarily based upon claimant's self-report, and Dr. Bryan previously noted claimant's tendency to 'extremely' over report symptoms." Tr. 75-6.

## C. K. McAuliffe, M.D.

Dr. McAuliffe reviewed Nevills's medical records for Vocational Rehabilitation in January 2008. Tr. 469. He recommended a work trial or physical capacity evaluation, and noted diagnoses of chronic neck pain with radiculopathy, multilevel discectomy and fusion, spinal stenosis and foraminal narrowing at C4-7. *Id.* Dr. McAuliffe listed functional limitations of "[l]imit lifting, carrying (per Dr. Kellogg, <2-3#) with the L arm, reaching, pushing, pulling, overhead work and prolonged or awkward positions. Per intake, flexible positions...are high priorities and per VRC notes, driving is problematic." *Id.* Dr. McAuliffe opined that Nevills was stable with permanent restrictions.

The ALJ did not address Dr. McAuliffe's opinion.

## D. Robert Sayson, M.D.

Dr. Sayson has been Nevills's treating physician since November 2008. Tr. 498. In January 2009, Dr. Sayson completed a form prepared by counsel in which he opined that Nevills could lift less than 10 pounds occasionally and frequently; could stand and walk less than two hours in a day, and must alternate between standing and sitting. Tr. 499. He stated that Nevills could never climb or crawl, occasionally balance, stoop, kneel, crouch and reach with his right arm, and frequently finger and feel with his right arm. Tr. 500.

In May 2010, Dr. Sayson completed a mental impairment questionnaire, prepared by counsel, in which he noted that Nevills had major depression, PTSD, sleep disorder, and chronic

pain. Tr. 569. He assessed a Global Assessment of Functioning of 48.[1] Dr. Sayson expected

that Nevills would miss work more than three times a month because of his impairments or

treatment. Tr. 571.

In July 2010, Dr. Sayson completed another form in which he opined that the limitations

he identified were based on the objective medical evidence of the prior cervical surgery. Tr. 554.

He stated that Nevills should never reach overhead with either arm, could occasionally reach to

overhead, handle, finger and feel with his left arm, and could frequently handle, finger and feel

with his right arm. Tr. 555. Dr. Sayson reviewed and agreed with the assessments of William

Madison, L.M.F.T., L.P.C.

The ALJ gave Dr. Sayson's opinions little weight, noting that they were based on

Nevills's subjective complaints and were inconsistent with the record, Dr. Sayson's own notes,

and Nevills's activities of daily living. Tr. 76.

**E. William Madison, L.M.F.T.**

Mr. Madison works in the same clinic as Dr. Sayson. He interviewed Nevills for 90

minutes, and examined his medical records on January 7, 2010. Tr. 508-14. Mr. Madison noted

diagnoses of major depression, PTSD, and chronic pain. He assessed a GAF of 45. Mr. Madison

stated that Nevills endorsed symptoms consistent with depression and some visual hallucination.

---

[1]  The GAF scale is a tool for "reporting the clinician's judgment of the individual's
overall level of functioning." American Psychiatric Ass'n., Diagnostic and Statistical Manual of
Mental Disorders 32 (4th ed. 2000)). It is essentially a scale of zero to 100 in which the clinician
considers "psychological, social, and occupational functioning on a hypothetical continuum of
mental health-illness," not including impairments in functioning due to physical or environmental
limitations. Id at 34. A Global Assessment of Functioning ("GAF") score between 41 and 50
indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent
shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no
friends, unable to keep a job)." Id at 32.

Tr. 509. He stated that Nevills was not a malingerer. *Id.* Mr. Madison opined that Nevills

would miss more than three days a month from work due to symptoms and treatment. Tr. 510.

Mr. Madison said that Nevills was seriously impaired in his ability to remember work

procedures, understand and carry out simple short instructions, maintain attention or a regular

schedule, and make simple work decisions. Tr. 511. Mr. Madison found that Nevills had no

ability to interact with the public and had limited ability to maintain appropriate social behavior

or use public transportation. Tr. 513.

   The ALJ gave Mr. Madison's opinion little weight. Tr. 77. The ALJ found that a

therapist was not an acceptable medical source, noting that Madison saw Nevills only once. This

reason to discredit Madison fails as it is the same reason the ALJ used to credit Dr. Bryson. The

ALJ stated that there was no evidence supporting Mr. Madison's assessment of marked

limitations in activities of daily living, social functioning, and concentration, persistence and

pace. The ALJ noted that Nevills reported difficulty putting on shirts or reaching overhead, and

difficulty washing his legs, but also reported that he could iron, prepare simple meals, and do

some dusting. Tr. 71. Nevills testified that he takes walks and can use public transportation. *Id.*

   Dr. Sayson reviewed Mr. Madison's assessment, and checked a box indicating he agreed

with the mental impairments and limitations identified by Mr. Madison. Tr. 555. The ALJ did

not mention Dr. Sayson's agreement with Mr. Madison.

   Both treating physicians Sayson and Kellogg stated that Nevills could only work part-

time at a sedentary job. The ALJ offered no reason to reject their opinions. Their opinions were

corroborated by the examination of a physical therapist and a mental health therapist.

8 - OPINION AND ORDER

The ALJ "gave some weight" to the November 2006 opinion of examining physician J. Scott Pritchard, D.O., who found that Nevills could occasionally lift 20 pounds and frequently lift 10 pounds and stand and/or walk for six hours in an eight hour work day, could frequently climb ramps and stairs and balance and kneel, and occasionally climb ladders, ropes and scaffolds.  Tr. 76, 383-90.

The ALJ erred because he offered no specific or legitimate reason to reject the opinions of the treating physicians.

## II. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)).  The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act.  *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  *Id.*  The "credit-as-true"

doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in

determining whether to enter an award of benefits upon reversing the Commissioner's decision.

*Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir.

2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding

issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

      The ALJ's omission of the opinions of the two treating physicians is erroneous for the

reasons set out above. The Vocational Expert testified that, if Drs. Kellog and Sayson's opinions

are credited, Nevills would be unable to maintain employment. Tr. 39.

      Accordingly, this matter is remanded for the calculation and award of benefits.

## CONCLUSION

      For these reasons, the ALJ's decision that Nevills is not disabled is not supported by

substantial evidence. The decision of the Commissioner is reversed and this case is remanded

pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this

opinion and order.

      IT IS SO ORDERED.

Dated this ___ day of May, 2012.

JAMES A. REDDEN
United States District Judge

10 - OPINION AND ORDER